UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

ANTHONY BUCZEK-BOOTH,            )
                                )
     Plaintiff,                 )
                                )
v.                              )        Case No. 2:24CV97   HEA
                                )
KRAFT HEINZ FOODS COMPANY,      )
                                )
     Defendant,                 )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary

Judgment, [Doc. No. 45] Although Plaintiff opposes the motion, he has not filed a

formal response to the motion. He has, however, submitted a "Supplement" which

includes unverified medical records, a written statement of the events and

background of his suit, and references to the statutes which cover disability

discrimination. Most of the factual background Plaintiff submitted is found in

Defendant's verified statement of uncontested material facts.

Federal Rule of Civil Procedure 56(e) states that if a party fails to properly

address another party's assertion of fact ..., the court may: (1) give an opportunity

to properly support or address the fact; (2) consider the fact undisputed for

purposes of the motion; (3) grant summary judgment if the motion and supporting

materials ... show that the movant is entitled to it; or (4) issue any other appropriate

1

order.

Similarly, the Court's local rules require a party opposing a summary judgment motion file a response to the statement of material facts with supporting evidence. The failure to respond to an individual statement of material fact, with appropriate citations, may constitute an admission of that fact. .Plaintiff, however, is proceeding *pro se* and is therefore granted some leeway not typically afforded to a party represented by counsel. *Williams v. Carter*, 10 F.3d 563, 567 (8th Cir. 1993) ("Pleadings and other documents filed by pro se litigants should be treated with a degree of indulgence, in order to avoid a meritorious claim's being lost through inadvertence or misunderstanding."). Federal Rule of Civil Procedure 56 also gives the Court a range of options for how to proceed when a party does not address another party's assertion of fact and does not require the Court to deem the fact admitted but allows the Court to grant summary judgment if the motion and supporting materials show the movant is entitled to it. Fed. R. Civ. P. 56(e). The Court will give plaintiff some leeway here and will not deem all defendant's individually numbered facts automatically admitted and will not grant defendant's motion for summary judgment based on plaintiff's procedural deficiencies. The Court can discern the relevant material facts that are supported by the record. Thus, the Court finds the following facts are undisputed based on its review of the record.

### Facts and Background

Plaintiff filed this action in the Circuit Court of Adair County, Missouri alleging Defendant discriminated against him based on his disability in violation of the Missouri Human Rights Act. Defendant removed the action based on the Court's diversity of citizenship jurisdiction.

Plaintiff's Petition alleges Defendant terminated his employment with Defendant because of his disability.

Defendant states it is an equal opportunity employer who is committed to equal opportunity employment through its policies, which prohibit discrimination, harassment, and retaliation. Defendant's Employee Handbook states: "Anyone who believes that they have observed or have been a victim of discrimination, harassment, or retaliation should immediately report the conduct to his or her supervisor, department manager, or human resources department.

In addition to allowing reports to be made to an individual supervisor, department   manager, human resources department, or any other member of management, Kraft Heinz also makes available for reporting purposes a phone hotline and website where employees may make reports anonymously. Plaintiff was aware Kraft Heinz prohibited discrimination on the basis of disability. Plaintiff was also aware during his employment that he was supposed to report any complaints of discrimination to Kraft Heinz. Kraft Heinz maintains a Reasonable Accommodation Policy that says: "It is the employee's responsibility to request an

3

accommodation. An employee who seeks an accommodation for a physical or mental disability should notify their [sic] human resources business partner or contact the accommodation coordinator at accommodation@kraftheinz.com."

Kraft Heinz maintains a no-fault Attendance Policy. Under this policy, any absence is considered an "occurrence" except absences for expressly stated reasons, such as absences due to on-the-job injuries and illnesses, absences for leave under the Family and Medical Leave Act, and absences covered by state or local sick leave laws or the Americans with Disabilities Act. Appropriate documentation and/or preapproval of absences is required to avoid an occurrence being assessed. Attendance is tracked by occurrences incurred on a rolling 12-month basis. An occurrence results when an employee is absent from work for a partial or full day, is tardy, leaves work early, or leaves and returns during their shift.

The Attendance Policy states that absences for two or more consecutive working days require a medical doctor's release to return to work, if the employee would like the absences grouped into one occurrence. Employees will be suspended, pending termination, after 13 total occurrences. Any employee wishing to have his or her number of occurrences reviewed from the last summary posting may request a review. This request must be submitted in writing explaining the reasons why the employee believes the posting is inaccurate. The Attendance

Policy expresses the importance of attendance:

> The acceptance of a job carries with it the responsibility of being present and prompt. Employees who are absent or tardy from work create a serious scheduling problem and place a burden on their team members. Building an effective, cohesive team environment requires employees who are dependable and reliable. Being on time and working your scheduled shift is critical to the success of our facility.

Plaintiff alleges Kraft Heinz discriminated against him on the basis of two purported disabilities: a heart condition and a surgery on his sacroiliac ("SI") joint. Plaintiff was first diagnosed with a heart condition on April 6, 2003, when he had his first heart attack. Plaintiff's SI joint did not affect his ability to perform his job duties. Plaintiff did not need any accommodations to perform his job duties because of his SI joint. Human Resources told Plaintiff he could use a walker at work, but he never needed to use it.

Plaintiff's heart condition does not limit his major life activities. . Plaintiff's heart condition did not affect his ability to do his job at Kraft Heinz, except on October 8, 2019, when he fainted and had to go to the hospital. No employees at Kraft Heinz made negative comments about Plaintiff's disabilities. Plaintiff is not aware of any statements made by anyone at Kraft Heinz that led him to believe he was discriminated against for his disabilities. Plaintiff never made any complaints of discrimination to Kraft Heinz's phone or online hotline. Plaintiff is aware of another employee at Kraft Heinz who has a pacemaker and is still employed.

Plaintiff's personal definition of a disability is different than the Equal

Employment Opportunity Commission's or Americans with Disabilities Act's definition. Plaintiff cannot say whether or not his employment termination was an act of disability discrimination.

Plaintiff is unable to perform the job duties of an Operations Technician today. Plaintiff considered himself unable to do his job as of October 16, 2023, the date his doctor told him he needed back surgery.

In November 2023, Plaintiff represented to the Social Security Administration that he was unable to work due to his disabilities.

Plaintiff began his employment at Kraft Heinz on or around February 22, 2017. Plaintiff informed Kraft Heinz of his heart condition prior to being hired. Kraft Heinz still hired him. At the time of Plaintiff's hire, he stated he was not an individual with a disability. Plaintiff began working at Kraft Heinz as a Line Technician.

Plaintiff received discipline for his attendance as early as June 26, 2019. On the Team Member Counseling Form he received on June 26, 2019, Plaintiff wrote "Doctor" next to one of the dates. This doctor's visit was not for a disability.

Plaintiff had three heart attacks during his employment with Kraft Heinz. They occurred between the start of his employment and October 2019. On October 8, 2019, Plaintiff fainted at work and was taken to the hospital. Thereafter, Plaintiff had surgery to install a pacemaker.

6

On November 6, 2019, Plaintiff was released to return to work with restrictions of no lifting greater than 10 pounds and no raising his arm over his head or behind his back for six weeks. On January 15, 2020, Plaintiff was released to return to work with no restrictions. Following his pacemaker surgery, Plaintiff has not lost consciousness or had chest pain.

Since October 2019, Plaintiff has experienced "episodes" in which the lower chambers of his heart go into arrhythmia. When Plaintiff has an episode, he stops what he is doing to sit down until the episode passes. Plaintiff had approximately three episodes a month requiring him to sit down during his shifts. Kraft Heinz allowed him to sit down for as much time as he needed. Kraft Heinz also allowed Plaintiff to sit down and rest when he had back pain.

Plaintiff provided Kraft Heinz with a Medical Questionnaire completed by his cardiologist, Dr. Zuidema, dated November 7, 2019. In response to the question "Does [Plaintiff] have a physical or mental disability that limits one or more major life activities?" Dr. Zuidema answered "No."

On June 22, 2021, Plaintiff provided Kraft Heinz with a doctor's note from his primary care physician that said he should not lift over 20 pounds for two weeks.

On October 30, 2021, Plaintiff was in a motorcycle accident. From October 30, 2021, until December 20, 2021, Plaintiff took a leave of absence due to his

injuries suffered in the accident and to take care of his wife due to the injuries she suffered in the accident.

On June 15, 2022, Plaintiff provided Kraft Heinz with a doctor's note from his primary care physician that said he should not lift over 15 pounds and should not engage in repetitive lifting and requested the Company allow Plaintiff to take breaks often to sit down. Kraft Heinz complied with those restrictions. Plaintiff provided Kraft Heinz with other doctor's notes in 2022 related to lifting restrictions and the need to take breaks to sit down.

When Plaintiff had lifting restrictions, Kraft Heinz complied with those restrictions. The Company was very helpful in accommodating those restrictions and had no problem with the restrictions. Kraft Heinz employees looked out for him and would tell him not to lift heavy items when he had lifting restrictions.

On July 22, 2022, Plaintiff received an Attendance Status Notification, stating his attendance record indicated that on July 7, 2022, he had reached termination of his employment in accordance with the Attendance Policy. However, Kraft Heinz did not terminate his employment at that time, noting that his employment would be terminated if he had three additional occurrences between July 7, 2022 and October 6, 2022, and he already had one occurrence on July 18, 2022.

On September 20, 2022, Plaintiff received another Attendance Status

8

Notification, which stated he had had three occurrences since July 7, 2022, on July 18, August 12, and September 15, 2022. Plaintiff talked to Human Resources employee Jacqueline Baez regarding the Attendance Status Notification and his injuries from his motorcycle accident. Baez asked him to provide documentation regarding any restrictions he had. Plaintiff provided a doctor's note that said he had lifting restrictions. After the discussion, Plaintiff's employment was not terminated for attendance.

On October 18, 2022, Plaintiff had surgery on his SI joint. Plaintiff took a leave of absence following the SI joint surgery, until he returned to work on December 20, 2022, with restrictions of no lifting over 30 pounds. He was approved for short-term disability benefits from October 24, 2022 through December 19, 2022.

Plaintiff became an Operations Technician ("Label Operator") after he returned to work following his SI joint surgery because the Line Technician position was being phased out. Plaintiff held the Label Operator position until his employment with Kraft Heinz ended. As a Label Operator, Plaintiff ensured labels were in the eight labeling machines properly, ensured placements of the labels on packages were correct, completed paperwork regarding the labels, and corrected any mistakes on the labels and paperwork.

Plaintiff provided Kraft Heinz with a Medical Questionnaire completed by

his surgeon, Dr. Meyer, dated March 23, 2023. In response to the question "Does patient have a physical or mental disability that limits one or more major life activity?" Dr. Meyer answered "No." Upon receipt of the Medical Questionnaire completed by Dr. Meyer, Human Resources completed the Interactive Process Checklist Form, stating "No" in response to the question "Does employee have a physical or mental disability that limits one or more major life activity?" At the time Dr. Meyer completed the Medical Questionnaire in 2023, Plaintiff was not eligible for FMLA leave.

Plaintiff took leave for various medical reasons throughout his employment and received short-term disability benefits each time, including on November 11, 2018, September 28, 2019 through October 6, 2019, October 8 through November 14, 2019, February 29, 2020 through March 7, 2020, July 21, 2020 through August 12, 2020, November 12, 2021 through December 13, 2021, January 15, 2022 through March 1, 2022, May 18, 2022 through June 23, 2022, and October 24, 2022 through December 19, 2022.

On August 18, 2023, Human Resources prepared Suspension Pending Termination documentation. The documentation noted Plaintiff had accrued 15 attendance points in the previous 12 months – two more points than the threshold for termination under the Attendance Policy.

On September 19, 2023, Plaintiff signed the August 18, 2023 Suspension

10

Pending Termination documentation, which explained he reached termination of employment in accordance with the Attendance Policy and was being suspended pending a review of his records. At the bottom of the August 18, 2023 Suspension Pending Termination documentation, next to "I dispute the following date(s):" Plaintiff wrote, "All of Them." However, next to one of the occurrences, he wrote "undisputed" because he clocked out early that day. Some of the other dates listed on the Suspension Pending Termination documentation were related to being off work when Plaintiff and his wife tested positive for COVID.

On September 19, 2023, Human Resources prepared updated Suspension Pending Termination documentation. This documentation noted Plaintiff clocked in late on August 15, August 24, and September 5, 2023. Because the documentation looked back for the previous 12 months, one of the 2022 occurrences listed on the August 18, 2023 Suspension Pending Termination documentation rolled off. Thus, as of September 19, 2023, Plaintiff had accrued 15.5 attendance points – 2.5 more points than the threshold for termination under the Attendance Policy.

Plaintiff does not know on which dates listed on the Suspension Pending Termination documentation he was absent for doctor's appointments.

Plaintiff spoke to Human Resources by phone multiple times after being provided with the Suspension Pending Termination documentation, yet Plaintiff

did not submit a written request for review of his attendance occurrences and did not provide Human Resources with any documents related to his absences.

On September 22, 2023, Human Resources spoke with Plaintiff by phone. Plaintiff said his absences were related to claims he had filed with Sedgwick, Kraft Heinz's third-party administrator for disability claims and leaves of absence.

On September 27, 2023, Human Resources spoke with a representative of Sedgwick to review Plaintiff's claims filed with Sedgwick. They were unable to find claims associated with the dates of absences Plaintiff wanted to dispute. Human Resources called Plaintiff the same day and advised him they were unable to locate claims associated with the dates he wanted to dispute.

Plaintiff's employment was terminated due to his violation of the Attendance Policy on September 28, 2023. Plaintiff did not submit a written request for review of his attendance occurrences, nor did he appeal Kraft Heinz's decision to terminate his employment by engaging in Kraft Heinz's Issue Resolution Process. At the time his employment ended, Plaintiff did not have any lifting or other restrictions.

Kraft Heinz has terminated the employment of other employees with no known disabilities at the Kirksville, Missouri location for violating the Attendance Policy.

**Summary Judgment Standard**

12

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When asserting that a fact is undisputed or is genuinely disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Alternatively, a party may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). More specifically, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).01

A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of material fact is genuine if it has a real basis in the record." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992). It is also genuine "when a reasonable jury could return a verdict for the nonmoving party on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (citing *Anderson*, 477 U.S. at 248) (internal quotation marks omitted). Evidence that presents only "some

13

metaphysical doubt as to the material facts," *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make a dispute of fact genuine. In sum, a genuine dispute of material fact requires "sufficient evidence supporting the claimed factual dispute" that it "require[s] a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249 (citation and internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex Corp.*, 477 U.S. at 323). The plaintiff may not then simply point to allegations made in its complaint but must identify and provide evidence of "specific facts creating a triable controversy." *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999) (internal quotation marks omitted). When considering a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In determining whether a genuine dispute of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts.

14

*Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Matsushita*, 475 U.S. at 587–88. *See also Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Rather, a "court's function is to determine whether a dispute about a material fact is genuine[.]" *Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996).

## Discussion

The Missouri Human Rights Act ("MHRA") makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... disability[.]" Mo. Rev. Stat. § 213.055. "[A]s it relates to the adverse decision or action" "[b]ecause" or "because of" means "the protected criterion was the motivating factor." Mo. Rev. Stat. § 213.010(2). "The motivating factor" means that "the employee's protected classification actually played a role in the adverse action or decision and had a determinative influence on the adverse decision or action." *Id.* at § 213.010(19). A protected "disability" is "a physical or mental impairment which substantially limits one or more of a person's major life activities, being regarded as having such an impairment, or a record of having such an impairment, which with or without

15

reasonable accommodation does not interfere with performing the job ....” *Id.* at §

213.010(5).

"For disability discrimination, a prima facie case requires the plaintiff to

demonstrate: '(1) [he] was disabled, (2) [he] was discharged, and (3) [his]

disability was the motiving factor in [his] discharge.' " *Johnson v. Midwest*

*Division - RBH, LLC*, 88 F.4th 731, 737 (8th Cir. 2023) (quoting *Ashby v.*

*Woodridge of Mo., Inc.*, 673 S.W.3d 537, 544 (Mo. Ct. App. 2023)). To establish

that he is disabled, Plaintiff must show that he has, was regarded as having, or had

a record of having, "an impairment that substantially limits a major life activity

and that, with or without reasonable accommodation, the impairment does not

interfere with performing the essential functions of [his] job." *Ashby*, 673 S.W.3d

at 544 (citations omitted). While an "employer has an affirmative duty to

reasonably accommodate an employee's [disability,] the burden is on the employee

to establish that with reasonable accommodation he could perform this job."

*Johnson*, 88 F.4th at 737 (quoting *Medley v. Valentine Radford Commc'ns, Inc.*,

173 S.W.3d 315, 321 (Mo. Ct. App. 2005)).

Here, Plaintiff has failed to adequately establish the elements of a disability

discrimination claim under the MHRA. Plaintiff has alleged that he is disabled

because of his heart condition and his sacroiliac but fails to controvert Defendant's

evidence that Plaintiff himself acknowledged he did not consider himself disabled.

16

Further, Plaintiff's treating physicians responded that Plaintiff was not disabled when they completed forms. Plaintiff never sought any accommodation nor did he ever advise Defendant that he suffered from an ailment which substantially limited a major life activity. Nowhere in the record does Plaintiff present any facts regarding how his conditions substantially limit a major life activity, as the MHRA requires. To establish that a condition is substantially limiting, the plaintiff must demonstrate that he is "significantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity, as compared to the average person." *Kirkeberg v. Canadian Pacific Ry.*, 619 F.3d 898, 903 (8th Cir. 2010) (citing 29 C.F.R. § 1630.2(j)(1)(ii)) (internal quotations omitted). Furthermore, "[t]his standard requires [the plaintiff] to show more than a 'mere difference' between his performance and that of the average individual." *Id*. (citing *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 565 (1999)). A diagnosis alone is typically not enough to show how a person is limited, so the plaintiff must present evidence showing the degree to which they personally are limited by their condition. *Id"* *Kirkeberg* 619 F.3d at 903. Since Plaintiff is unable to establish an essential element of his claims, Defendant is entitled to summary judgment.

**Conclusion**

17

Pursuant to Rule 56 of the federal Rules of Civil Procedure, there exist no genuine disputes as to any material facts. Defendant is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, [Doc. No 45], is **GRANTED**.

An appropriate judgment is entered this same date.

Dated this 13th day of April, 2026.


_____
     HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE

18